**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**JON ROGERS,** *et al.*,

      **Plaintiffs,**

    **v.**                              **Civil Action 2:22-cv-3231**
                                              **Magistrate Judge Chelsey M. Vascura**

**RESTORE CONTRACTING, INC.,** *et al.*,

      **Defendants.**

## OPINION AND ORDER

In this diversity action, in which the parties have consented to the jurisdiction of the Magistrate Judge pursuant to 28 U.S.C. § 636(c), Plaintiffs, Jon and Monica Rogers, bring this action arising out of the allegedly defective installation of Plaintiffs' roof against Defendants, Restore Contracting, Inc., the contractor who installed Plaintiffs' roof, and GAF Materials, LLC, the manufacturer of the roofing shingles. This matter is before the Court on (1) Plaintiffs' Motion for Summary Judgment against Restore (ECF No. 30), (2) GAF's Motion for Summary Judgment against Plaintiffs (ECF No. 32), (3) Plaintiffs' Motion to Deny or Defer GAF's Motion for Summary Judgment under Federal Rule of Civil Procedure 56(d) (ECF No. 33), and (4) GAF's Motion to Strike references to Restore's mediation statement from Plaintiffs' submissions (ECF No. 37). For the following reasons, Plaintiffs' Motion for Summary Judgment (ECF No. 30) is **DENIED**, GAF's Motion for Summary Judgment (ECF No. 32) is **GRANTED**, Plaintiffs' Motion under Rule 56(d) (ECF No. 33) is **DENIED**, and GAF's Motion to Strike (ECF No. 37) is **GRANTED**.

## I.    FACTUAL BACKGROUND

Plaintiffs own a house in Steubenville, Ohio. On June 5, 2020, Plaintiffs and Defendant Restore Contracting, Inc., entered into a contract for Restore to provide roof replacement and rehabilitation services on Plaintiffs' house. (Contract, ECF No. 30-1, PAGEID #212–16.) The contract was negotiated on behalf of Restore by Kevin Jarvis, an independent contractor acting as a sales representative for Restore. (*Id.*; Leach Dep. 13–14, ECF No. 30-3.) Through subcontractors, Restore began its work on Plaintiffs' roof in September 2020 and completed the project in March 2021. (Restore's Ans. to Pls.' Interrog. No. 11, ECF No. 31-1; Rogers Aff. ¶ 31, ECF No. 30-1.) Restore used GAF Slate Line Shingles manufactured by Defendant GAF Materials, LLC. (Restore's Ans. to Pls.' Interrog. Nos. 10, 13, 14., ECF No. 31-1.) The shingles were purchased by Restore from non-party Beacon Roofing Company. (Restore's Ans. to Ps' Interrog. No. 9, ECF No. 31-1.)

Soon after completion of the roofing project, shingles began to fall off the roof of Plaintiffs' home. (Rogers Aff. ¶ 36, ECF No. 30-1.) Kevin Jarvis and Marvin Leach, the sole owner and president of Restore, visited Plaintiffs' home on three separate occasions to replace fallen shingles; Plaintiffs then called Allen Taylor of Fast Roofing Company to inspect Plaintiffs' roof. (Rogers Aff. ¶¶ 37, 40, ECF No. 30-1; Leach Dep. 6, ECF No. 30-3.) Mr. Taylor inspected the roof on May 25, 2022, and determined that Restore's roofing system had been installed in an unworkmanlike manner, in that:

a. The Starter Shingles had been installed upside down and were not properly nailed, by Restore Contracting, Inc., all around the eaves of the Rogers house.

b. Shingles, which had been installed by Restore Contracting, Inc., had fallen off the roof, because they were not fastened correctly, as per specs.

c. Valleys, which had been installed by Restore Contracting, Inc., were running in the wrong direction. For example, the valley at the dormer should be under the main roof; but, Restore had installed the main roof under the dormer roof. That

defect allowed water to come under the shingles, which, in turn, causes warping of the plywood roof sheeting.

d. The roof, which had been installed by Restore Contracting, Inc., was not properly ventilated. It had only 1 attic fan. Improper ventilation was verified by an Owens Coming Ventilation Specialist. Failure of proper ventilation cause bucking and warping of the plywood roof sheeting.

e. There was an absence of ridge cap shingles, in the roof which had been installed by Restore Contracting, Inc. Therefore, peaks were not covered. That defect allowed water to flow under the shingles.

f. Improper starter strip shingles (with seal in wrong position) had been installed by Restore Contracting, Inc.

g. Improper seam and spacing, where a starter strip meets under first row of shingles, had been improperly installed by Restore Contracting, Inc. There should have been a 6-inch overlap to prevent water from entering between shingles. But, there was insufficient overlap.

h. There was improper nailing 2 inches away from seams. Nails should be 6 inches away from the shingle edges. This defect allowed water to enter under the shingles. I could see rusty nails, which confirmed that water had entered.

i. Shingles had not been manually sealed as per GAF specs. GAF requires manually sealing with sealing cement. The manual sealing had not been done.

j. There was an absence of ice and water shields in valleys. The ice and water shield is a rubberized material that goes under the shingles and sticks to the plywood roof sheeting around the roofs perimeter and valleys. There was none. This absence violates the Building Code, and it allowed ice and water to enter under the shingles.

k. There was improper felt. Felt, which is GAF Certified for a Warranty with GAF shingles, had not been installed. Restore Contracting, Inc. had used the wrong type of felt in areas which it had felted; and, there were areas where no felt had been installed, at all.

l. There were raised nails coming up through the roof.

m. There was improper drain and waste vent flashing and chimney flashing. That lack of proper flashing allowed water and ice to enter under the shingles.

n. Shingles had been run backwards in 3 valleys. Therefore, water and ice entered under all of those shingles.

3

o.  As a result of un-workmanlike installation of the roofing system on the Rogers home, plywood warped and sagged, water and ice entered under the shingles and the entire roofing system had to be replaced.

p.  There was an absence of a GAF Warranty.

(Taylor Aff. ¶ 7, ECF No. 30-2.) As a result of these installation defects, Mr. Taylor determined that the entire roofing system needed to be replaced. (*Id.* at ¶ 10.) Mr. Taylor and Fast Roofing Company replaced Plaintiffs' roof at a cost of $49,450.00. (*Id.* at ¶ 11.) Plaintiffs also paid $4,277.50 to Hostellter Seamless Gutters for replacement of the house's gutters. (Rogers Aff. ¶ 48, ECF No. 30-1.) Plaintiffs therefore assert that their total economic loss resulting from Restore's defective work is $53,727.50. (*Id.* at ¶ 62.)

## II.    PROCEDURAL HISTORY

Plaintiffs commenced this action on July 18, 2022, in the Court of Common Pleas for Jefferson County, Ohio. (Compl., ECF No. 2.) Plaintiffs' Complaint named Restore Contracting, Inc., Kevin Jarvis, and GAF Materials, LLC, as Defendants and asserted claims against all Defendants for general negligence, engineering professional negligence, violation of the Ohio Consumer Sales Practices Act, state-law products liability, and breach of implied warranties under the Uniform Commercial Code. (*Id.*) On August 25, 2022, GAF removed the action to this Court on the basis of diversity jurisdiction. (Notice of Removal, ECF No. 1.) After Plaintiffs failed to effect service of process over Mr. Jarvis within the time permitted by Federal Rule of Civil Procedure 4(m), the undersigned issued an Order for Plaintiffs to show cause why their claims against Mr. Jarvis should not be dismissed without prejudice. (ECF No. 10.) When Plaintiffs failed to respond to that Order, the undersigned issued a Report and Recommendation that Plaintiffs' claims against Mr. Jarvis be dismissed without prejudice. (ECF No. 11.) Plaintiffs did not respond to the Report and Recommendation, and Judge Watson adopted the Report and Recommendation, dismissing Mr. Jarvis without prejudice, on January 27, 2023. (ECF No. 17.)

On February 9, 2023, the undersigned issued a Preliminary Pretrial Order that adopted the case schedule deadlines proposed by the parties in their Rule 26(f) Report. (ECF Nos. 19–20.) The Preliminary Pretrial Order set deadlines for the disclosure of primary and rebuttal expert reports on October 1, 2023, and November 1, 2023, respectively. (ECF No. 20.) That Order also set a deadline for the completion of all discovery on December 15, 2023, and required the parties to "file any motions relating to discovery within the discovery period." (*Id.*) Dispositive motions were due by January 15, 2024. (*Id.*) No party requested an extension of any of the Preliminary Pretrial Order's deadlines.

The parties attended a mediation with a court-facilitated volunteer attorney mediator on July 24, 2023. The parties were unable to reach an agreement at mediation.

On December 7, 2023, Plaintiffs filed a Motion for Summary Judgment on their claims against Restore only. (ECF No. 30.) To date, Restore has not filed a memorandum in opposition to Plaintiffs' Motion for Summary Judgment, despite obtaining an extension of time to do so until January 24, 2024. (ECF No. 44.)

On December 15, 2023—the day that discovery closed—GAF filed a Motion for Summary Judgment on Plaintiffs' claims against it, relying primarily on the lack of any expert testimony establishing that the shingles manufactured by GAF were defective. (ECF No. 32.) Three days later, Plaintiffs filed both a Motion to Deny or Defer GAF's Motion for Summary Judgment under Federal Rule of Civil Procedure 56(d) and a Response in Opposition to GAF's Motion for Summary Judgment. (ECF No. 33–34.) Both filings assert that Plaintiffs intend to rely on the testimony of Kevin Jarvis (whom Restore disclosed as a possible expert witness) who will testify that the shingles were defective, but that Defendants' counsel were unresponsive to Plaintiffs' attempts to schedule Mr. Jarvis's deposition. (*Id.*) Both filings also rely on an email

from Restore's counsel to the mediator, copying counsel for all parties, in advance of the July 24, 2023 mediation session. (*Id.*) On January 5, 2024, GAF filed a Motion to Strike references to this email throughout the record as a confidential mediation statement protected by Federal Rule of Evidence 408 and S.D. Ohio Civ. R. 16.3(c). (ECF No. 37.)

### III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the court may "consider the fact undisputed for purposes of the motion").

The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 250 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255 (citation omitted). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts, . . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotation marks and citations omitted); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an

essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

## IV.    ANALYSIS

### A.    Plaintiffs' Motion for Summary Judgment against Restore

As an initial matter, the set of claims on which Plaintiffs move for summary judgment against Restore is not coextensive with the claims asserted in Plaintiffs' Complaint. In addition to not moving for judgment on their claim for engineering professional negligence, Plaintiffs' Motion for Summary Judgment appears to move for judgment on new claims concerning the Residential Construction Service Law and Builder's Warranty under Ohio Revised Code Chapter 4722, as well as negligent misrepresentation—none of which are mentioned in the Complaint. As Plaintiffs have not sought leave to amend their Complaint under Federal Rule of Civil Procedure 15 or explained why they could not have done so by the June 1, 2023 deadline for motions to amend the pleadings under Rule 16, the Court will not consider Plaintiffs' arguments as to these new claims. *See Tucker v. Union of Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005) (Although the Federal Rules of Civil Procedure "provide for liberal notice pleading at the outset of the litigation," "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Rule 15(a).").

Further, Restore has not responded to Plaintiffs' Motion for Summary Judgment, and the time to do so has now expired. Even so, "when faced with an unopposed motion for summary judgment, the district court cannot grant a motion for summary judgment without first considering supporting evidence and determining whether the movant has met its burden." *Watkins v. BLM Companies, LLC*, 644 F. Supp. 3d 439, 447 (S.D. Ohio 2022) (cleaned up); *see also F.T.C. v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014) ("Even where a party offers no timely response to a motion for summary judgment, the District Court may not use that

as a reason for granting summary judgment without first examining all the materials properly

before it under Rule 56(c).") (cleaned up). "However, neither the trial nor appellate court will

*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving

party." *Id.* at 630 n.11 (cleaned up).

The Court will therefore consider Plaintiffs' summary judgment arguments as to their

claims against Restore for general negligence, products liability, breach of implied warranties

under the Uniform Commercial Code, and violation of the Ohio Consumer Sales Practices Act in

turn.

**1.      Plaintiffs are not entitled to judgment against Restore on their claim for general negligence.**

To prevail in a negligence action under Ohio law, "a plaintiff must demonstrate that

(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and

(3) the defendant's breach proximately caused the plaintiff to be injured." *Lang v. Holly Hill*

*Motel, Inc.*, 122 Ohio St. 3d 120, 122 (2009). As a result, "[a] person's failure to exercise

ordinary care in doing or failing to do something will not amount to actionable negligence unless

such person owed to someone injured by such failure a duty to exercise ordinary care." *Snay v.*

*Burr*, 167 Ohio St. 3d 123, 126 (2021). "In other words, if there is no duty then there can be no

liability for negligence." *Id.* "[A] defendant's duty to a plaintiff depends upon the relationship

between the parties and the foreseeability of injury to someone in the plaintiff's position." *Id.*

(quoting *Commerce & Industry Ins. Co. v. Toledo*, 45 Ohio St. 3d 96, 98 (1989)). "Foreseeability

alone, however, is not always sufficient to establish a duty of care." *Id.* at 127. Rather, "tort

liability . . . arises from the breach of some positive legal duty imposed by law because of the

relationship of the parties . . . ." *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 117 (6th Cir.

1976) (applying Ohio law).

Further, when the parties' relationship is governed by a contract, a negligence plaintiff must "show that the tort claims derive from the breach of duties that are independent of the contract and that would exist notwithstanding the contract." *Netherlands Ins. Co. v. BSHM Architects, Inc.*, 111 N.E.3d 1229, 1237 (Ohio Ct. App. 2018); *see also Wolfe v. Cont'l Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981) ("a tort exists only if a party breaches a duty which he owes to another independently of the contract, that is, a duty which would exist even if no contract existed") (applying Ohio law).

Ohio courts have concluded that when, as here, the parties' relationship is governed by a contract for construction services, the duty to perform in workmanlike manner arises from an implied contractual term, not from tort. *See Barton v. Ellis*, 34 Ohio App. 3d 251, 253 (1986) ("[T]he liability of a builder-vendor of a *completed* structure for failure to exercise reasonable care to perform in a workmanlike manner sounds in tort, and arises *ex delicto*. . . . By contrast, in the provision of future services, liability arises *ex contractu* as an implied bargain, . . . provision, condition, or term of sale.") (emphasis in original); *Kishmarton v. William Bailey Constr., Inc.*, 93 Ohio St. 3d 226, 229 (2001) ("[W]here the vendee and builder-vendor enter into an agreement for the future construction of a residence, the vendee's claim for breach of an implied duty to construct the house in a workmanlike manner arises *ex contractu*."). Therefore, to the extent that Restore had a duty to perform the roof repair and replacement on Plaintiffs' home in a workmanlike manner, that duty sounds in contract and not in tort.

Plaintiffs have not identified the source of any non-contractual duty to perform in a workmanlike manner and none is readily apparent to the Court. Accordingly, because Plaintiffs have not established the existence of a tort duty, there can be no liability for negligence. Plaintiffs are therefore not entitled to summary judgment on their negligence claim.

2.     **Plaintiffs are not entitled to judgment on their claim against Restore for products liability.**

Plaintiffs assert claims against Restore under Ohio Revised Code § 2307.71 *et seq.* for products liability, asserting that Restore is both a manufacturer and supplier under the statute and that both the GAF shingles and the roofing system as a whole were defective. Plaintiffs are not entitled to judgment on this claim because Restore is neither a manufacturer or supplier under the Ohio products liability statute with respect to the GAF shingles, and because the roofing system as a whole is a fixture and not a "product" for purposes of the statute.

First, as to the shingles, there are no facts supporting Plaintiffs' assertion that Restore is a manufacturer in this respect. Under Ohio Rev. Code § 2307.71, "manufacturer" means "a person engaged in a business to design, formulate, produce, create, make, construct, assemble, or rebuild a product or a component of a product." Plaintiffs' brief and Mr. Rogers' and Mr. Taylors' affidavit all describe GAF as the manufacturer of the shingles with no suggestion that Restore was involved in their manufacture. Further, Restore was not a "supplier" with regard to the shingles, as the statutory definition of "supplier" "does not include . . . [a] provider of professional services who, incidental to a professional transaction the essence of which is the furnishing of judgment, skill, or services, sells or uses a product." Ohio Rev. Code § 2307.71(15)(b)(iii). Restore's sale and use of GAF shingles were unquestionably incidental to Restore's provision of services to replace Plaintiffs' roof. Restore therefore cannot held liable under Ohio's products liability statute for defects in the GAF shingles.

Restore also cannot be held liable under the products liability statute for defects in the roofing system, because the roofing system is not a "product" for purposes of the statute. "Product" is defined as "any object, substance, mixture, or raw material that constitutes tangible personal property . . . ." Ohio Rev. Code § 2307.71(12)(a). "Under this definition, an item must

10

be personal property before it can fall within the realm of products liability." *Wireman v. Keneco Distributors, Inc.*, 75 Ohio St. 3d 103, 105–06 (1996). In *Wireman*, the Ohio Supreme Court adopted a three-part test to determine whether an item constituted a fixture rather than personal property protected by the products liability statute: a fixture must (1) be actually annexed to real property or something appurtenant thereto, (2) appropriated to the use or purpose of that part of the realty with which it is connected, and (3) be intended to be a permanent addition to the real property. *Id.* at 106. The Ohio Supreme Court found that a vapor recovery system was personal property and not a fixture because there was no intention to make the system a permanent part of the bulk plant where it was installed. *Id.* This lack of intention was inferred from the system owner's sale of the system via bill of sale, which carried a presumption of personalty. *Id.* Further, the owner's original purchase agreement contained a clause requiring the seller to remove the system if removal was required by law. *Id.*

Following *Wireman*, the Ohio Tenth District Court of Appeals found a "roofing system" to be an item of personal property, and not a fixture, so as to be encompassed by Ohio's products liability statute. *See Fed. Ins. Co. v. HPG Int'l, Inc.*, 143 Ohio App. 3d 450 (2001). However, in *HPG*, the "roofing system" was a single "elastomeric sheet" that was "loosely laid" over "the entire roof continuously from edge to edge" and that could "be rolled up and installed on [a] new roof platform." *Id.* at 455. The *HPG* court found that "the fact that the roof system was not attached to the roof and could be rolled up and installed on a new roof platform indicates that it is similar to the type of vapor recovery system that was found to be a product by the Ohio Supreme Court in *Wireman*." *Id.* (cleaned up).

Here, it is undisputed that the roofing system as described by Plaintiffs and Mr. Taylor involved roofing materials that were attached to Plaintiffs' real property and that were

11

appropriated to the use of the realty—*i.e.*, the purpose of the roofing system was "to protect the Plaintiffs' home from rain, ice, and damage caused by weather." (Pls.' Mot. 17, ECF No. 30.) Further, in contrast to the products in *Wireman* and *HPG*, there is no indication that the roofing system could be removed and installed in another location such that it was not meant to be a permanent addition to Plaintiffs' real property. Accordingly, the Court concludes that the roofing system at issue is a fixture and not a "product" within the meaning of Ohio's products liability statute. Plaintiffs are therefore not entitled to summary judgment their products liability claim.[1]

### 3. Plaintiffs are not entitled to judgment on their claim against Restore for breach of UCC implied warranties.

Plaintiffs assert that Restore breached the Uniform Commercial Code's ("UCC") implied warranty of merchantability and implied warranty of fitness for a particular purpose under Ohio Rev. Code §§ 1302.27 and 1302.28 as to both the GAF shingles and the roofing system as a whole. Plaintiffs are not entitled to judgment for breach of any UCC warranties as to the shingles because Plaintiff has offered no evidence that the shingles were defective in any way. Mr. Taylor's affidavit identifies myriad problems with the manner in which the shingles were installed, but does not suggest that the shingles themselves were defective. Accordingly, Plaintiffs have not demonstrated that the shingles were not merchantable or unfit for any purpose.

Further, just as the roofing system is not a "product" for purposes of Ohio's products liability statute, the roofing system is not a "good" for purposes of the UCC. Article II of the UCC applies only to "transactions in goods," and "goods" are defined as "all things (including

---

[1] Plaintiffs also rely on *Wilson v. Kelly Energy Sys., Inc.*, No. C-910510, 1992 WL 277074, at *4 (Ohio Ct. App. Oct. 7, 1992), asserting that the First District Court of Appeals "upheld a jury verdict finding that the roofing system was a defective product pursuant to R.C. 2307.73." (Pls.' Mot. 21, ECF No. 30.) But *Wilson* did not address the product-fixture distinction and is therefore of little persuasive value.

specially manufactured goods) which are *movable* at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities, and things in action." Ohio Rev. Code §§ 1302.01(A)(8), 1302.02 (emphasis added). Thus, "[t]he definition of goods is based on the concept of movability . . . ." Ohio Rev. Code § 1302.01 (Comment 1 to UCC 2-105). "Movability," in turn, describes "[p]roperty that can be moved or displaced, such as personal goods; a tangible or intangible thing in which an interest constitutes personal property; specif., anything that is not so attached to land as to be regarded as a part of it as determined by local law." Black's Law Dictionary (11th ed. 2019). Although the individual components of the roofing system (such as shingles, nails, or felt) would likely constitute movable goods under the UCC, the roofing system as a whole was constructed in place on Plaintiffs' home such that it was always attached to the residence and was never an item of movable personal property. Nor do Plaintiffs offer any authority supporting the classification of the roofing system as a good. Accordingly, the undersigned finds that the roofing system is not a "good" for purposes of the UCC, and the UCC's implied warranties therefore do not apply. As a result, Plaintiffs are not entitled to judgment on their claim for breach of implied UCC warranties.

### 4. Plaintiffs are not entitled to judgment on their claims for violation of the Ohio Consumer Sales Practices Act.

Finally, Plaintiffs assert that Restore violated the Ohio Consumer Sales Practices Act ("CSPA"). Specifically, Plaintiffs contend that Restore committed an "'unfair or deceptive act or practice in connection with a consumer transaction,' within the meaning of R.C. 1345.02(A) and (B)" with respect to the "roofing materials" used by Restore to repair and replace Plaintiffs' roof, by representing that the roofing materials have "'performance characteristics' and 'benefits' that they do not have," that the roofing materials were "of a particular standard, quality, grade, style,

prescription, or model" when they were not, and that the roofing materials had been "supplied in accordance with a previous representation" when they had not. (Pls.' Mot. for Summ. J. 23, ECF No. 30) (quoting Ohio Rev. Code §§ 1345.02(B)(1), (B)(2), and (B)(5)). Plaintiffs further assert that Restore committed an "unconscionable act" or "unfair or deceptive act or practice in connection with a consumer transaction,' within the meaning of R.C. 1345.03(A) and (B), by "'knowingly tak[ing] advantage of the inability of the consumer reasonably to protect the consumer's interests because of the consumer's . . . ignorance, . . ., or inability to understand the language of an agreement' which includes technical engineering terms and specifications," by "[knowing] at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction," by "knowingly ma[king] a misleading statement of opinion on which the consumer was likely to rely to the consumer's detriment," and by "without justification, refus[ing] to make a refund in cash or by check for a returned item that was purchased with cash or check." (*Id.*) (quoting Ohio Rev. Code §§ 1345.03(B)(1), (B)(6), and (B)(7)).

Beyond Plaintiffs' reference to "roofing materials" in connection with § 1345.02, Plaintiffs' argument as to their CSPA claims consists entirely of recitations of the statutory language. Plaintiffs have made no effort to identify what practices or representations by Restore were unfair, deceptive, or unconscionable under the statute. Further, Plaintiffs have not identified or offered evidence in support of any defect in any of the roofing materials or any misrepresentations as to the roofing materials' performance characteristics, benefits, or quality. Plaintiffs therefore fail to carry their burden under Rule 56 to demonstrate that they are entitled to judgment. *See Celotex*, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying

14

those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.") (quoting Fed. R. Civ. P. 56(c)); *Calderone v. United States*, 799 F.2d 254, 258–59 (6th Cir. 1986) ("Rule 56(c) requires the moving party to show not only the absence of a disputed issue of fact but also that he is entitled to judgment as a matter of law."). Plaintiffs' failure to connect relevant evidence to the elements of their CSPA claims prevents entry of summary judgment in their favor on those claims.

In sum, Plaintiffs have not demonstrated that they are entitled to judgment on any of their claims against Restore. Plaintiffs' Motion for Summary Judgment is therefore **DENIED**.

**B.    GAF's Motion for Summary Judgment against Plaintiffs**

Before the Court can resolve GAF's Motion for Summary Judgment, it must first determine (1) whether the Court must exclude from its consideration under Federal Rule of Evidence 408 and S.D. Ohio Civ. R. 16.3(c) a July 21, 2023 email from Restore's counsel, and (2) whether Plaintiffs are entitled to additional time to depose Kevin Jarvis. The Court turns to each of these questions before considering the merits of GAF's Motion for Summary Judgment.

**1.    Restore's July 21, 2023 email is a mediation statement that the Court may not consider in evaluating the parties' motions.**

In Plaintiffs' Rule 56(d) Motion and their response in opposition to GAF's Motion for Summary Judgment, Plaintiffs rely on a July 21, 2023 email from Eddie Krause, Restore's counsel.[2] That email was sent by Mr. Krause to the Court-appointed mediator for this case as well as counsel of record for Plaintiffs and Defendants. In the body of the email, Mr. Krause characterizes it as a "mediation statement." The email further sets forth Restore's position on

---

[2] GAF represents, and no party has disputed, that Mr. Krause is an attorney for Restore, although he has not entered an appearance on the docket in this case. (*See* McPeek Decl. ¶ 3, ECF No. 45-1.)

15

liability and references previous settlement discussions by the parties. GAF moves to strike this email, and any references to its contents, from the docket wherever they appear due to the confidentiality protections for mediation communications under Federal Rule of Evidence 408 and S.D. Ohio Civ. R. 16.3(c).

The Court agrees. Although Plaintiffs dispute that the email constitutes a "mediation statement," this assertion is belied by Plaintiffs' multiple prior references to the email as Restore's "Mediation Statement." (*See* Pls.' Rule 56(d) Mot. 2, ECF No. 33; Pls.' Mem. in Opp'n to GAF's Mot. for Summ. J. 2–3, 9, ECF No. 34.) Further, the email comprises "a statement made during compromise negotiations about the claim," which under Federal Rule of Evidence 408 "is not admissible—on behalf of any party—either to prove or disprove the validity or amount of a disputed claim." *See* Fed. R. Evid. 408(a)(2). Similarly, this Court's Local Rules provide that "statements made in settlement negotiations" are "not admissible to prove liability for or the invalidity of a claim or its amount in the case in which the settlement negotiations occur," and "all communications made by any person . . . during ADR proceedings conducted under the authority of this Court are confidential and are subject to disclosure only as provided in subsection (c)(3) of this Rule." *See* S.D. Ohio Civ. R. 16.3(c)(1). None of the Rule 16.3(c)(3) exceptions (allowing limited disclosure by the mediator, or disclosure upon the agreement of all parties or as ordered by the Court) apply here.

Plaintiffs also contend that the email should be admissible for the purposes of their Rule 56(d) Motion and opposition to GAF's Motion for Summary Judgment because the email was introduced as an exhibit by Plaintiffs' counsel during the deposition of Marvin Leach, Restore's owner and president, with no objection from GAF at that time. But this use of the email does not run afoul of the protections of Rule 408 or Rule 16.3(c) because such use was neither the

submission of evidence before a Court nor the disclosure of a confidential communication beyond to any parties who had not already received the email. Rules 408 and 16.3(c) are therefore not implicated by use of the email at Mr. Leach's deposition.

Finally, Plaintiffs contend that they rely on the email not to prove the validity of their claim, but to demonstrate their diligence in pursuing Mr. Jarvis's deposition. This argument is not well-taken, as Plaintiffs did not raise the possibility of deposing Mr. Jarvis until two months after Mr. Krause's email. (*See* Sept. 21, 2023 Email from Frank Bruzzese, ECF No. 33, PAGEID #455.) Thus, even if the Court were to consider Mr. Krause's email when evaluating Plaintiffs' diligence, consideration of the Mr. Krause's email would be of no aid to Plaintiffs.

Accordingly, GAF's Motion to Strike is **GRANTED**. The Court will not consider Mr. Krause's July 21, 2023 email when evaluating the remaining motions.

> ### 2.    Plaintiffs have not demonstrated good cause to deny or defer a ruling on GAF's Motion for Summary Judgment.

Plaintiffs request additional time under Federal Rule of Civil Procedure 56(d) to depose Kevin Jarvis before the Court rules on GAF's Motion for Summary Judgment. Rule 56 provides in pertinent part:

> (d) **When Facts Are Unavailable to the Nonmovant.** If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may:
>
>> (1) defer considering the motion or deny it;
>>
>> (2) allow time to obtain affidavits or declarations or to take discovery; or
>>
>> (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d). "The purpose behind Rule 56(d) is to ensure that plaintiffs receive a full opportunity to conduct discovery to be able to successfully defeat a motion for summary judgment." *Doe v. City of Memphis*, 928 F.3d 481, 490 (6th Cir. 2019) (cleaned up). There are

five factors to consider when evaluating a motion under Rule 56(d), described by the United

States Court of Appeals for the Sixth Circuit as the "*Plott* factors":

> (1) when the appellant learned of the issue that is the subject of the desired discovery; (2) whether the desired discovery would have changed the ruling below; (3) how long the discovery period had lasted; (4) whether the appellant was dilatory in its discovery efforts; and (5) whether the appellee was responsive to discovery requests.

*See id.* at 491 (quoting *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir. 2008) and *Plott v.*

*Gen. Motors Corp.*, 71 F.3d 1190, 1196–97 (6th Cir. 1995)).

Here, the *Plott* factors tend to weigh against Plaintiffs. First, Plaintiffs were aware that

Mr. Jarvis was a person with knowledge relevant to their claims before the litigation was even

commenced; indeed, Mr. Jarvis was initially named as a defendant. This is not a case in which

Plaintiffs learned they might need to take Mr. Jarvis's deposition at the eleventh hour.

Second, it is not at all clear that the desired discovery would affect the Court's decision

on GAF's Motion for Summary Judgment. Plaintiffs assert that Marvin Leach, Restore's owner

and president, testified at deposition that Mr. Jarvis is the person who could confirm that GAF's

shingles were defective; but what Mr. Leach actually stated is that, in regard to the possibility of

a defect in the GAF shingles, "Kevin made a few statements on a few reasons what he thought. I

can't remember verbatim exactly what they were" and that "Kevin was speaking to that matter. It

would be best to get that answer from him." (Leach Dep. 36–37.) These equivocal statements do

little to establish that Mr. Jarvis's testimony would have any bearing on shingle defects.

Plaintiffs also assert that Restore identified Mr. Jarvis as an expert who had knowledge that the

shingles were defective; but the interrogatory response that Plaintiffs cite in support states only

that Mr. Jarvis may be an "expert witness[ ] Restore anticipates calling to testify at trial or

hearing of this matter." (Restore's Ans. to GAF's Interrog. 4, ECF No. 30-5.) Plaintiffs have not

pointed the Court to any evidence that Restore considered Mr. Jarvis an expert specifically in

shingle manufacturing or defects. Nor did Restore end up producing an expert report by Mr. Jarvis on any issue.

Third, the discovery period lasted more than ten months. The Court finds that ten months afforded Plaintiffs an ample opportunity to depose Mr. Jarvis, given that his role in the underlying facts was known from the outset.

The Court will consider the fourth and fifth factors—Plaintiffs' diligence and Defendants' responsiveness—together. Plaintiffs' first indication that they sought to depose Mr. Jarvis came in an email on September 21, 2023 (seven months after discovery commenced) from Plaintiffs' counsel asking Defendants' counsel for possible deposition dates for Mr. Jarvis. (ECF No. 33, PAGEID #455.) Defendants did not respond until October 18, 2023, when Restore's counsel emailed Plaintiffs' counsel to say that the earliest that all of Mr. Jarvis, counsel for Restore, and counsel for GAF were available was the week of November 6th. (*Id.* at PAGEID #456.) Plaintiffs did not attempt to schedule Mr. Jarvis's deposition in November. Instead, on December 8, 2023 (one week before the discovery cutoff and more than month after the rebuttal expert disclosure deadlines had passed), Plaintiffs again asked Defendants' counsel for dates for Mr. Jarvis's deposition. (*Id.* at PAGEID #457.) Plaintiffs followed up on December 12, 2023, and asked whether the parties should request a conference with the undersigned to adjust the case schedule. (*Id.* at PAGEID #458.) Defendants did not respond to either of these December emails; nor did Plaintiffs contact the Court to request a discovery or scheduling conference. GAF's Motion for Summary Judgment followed on December 15, 2023—one month prior to the dispositive motions deadline, but on the last day of the discovery period.

On these facts, the Court finds that Plaintiffs were dilatory in their discovery efforts. Plaintiffs had the full benefit of the ten-month discovery period to depose Mr. Jarvis but waited

until more than seven months had elapsed before seeking his deposition. Plaintiffs then failed to follow up with Defendants' counsel when they suggested possible dates. Finally, to the extent Plaintiffs felt they were hindered in their discovery efforts by Defendants' lack of responsiveness, Plaintiffs failed to bring that discovery dispute to the Court during the discovery period as required by the Preliminary Pretrial Order and have offered no explanation for that failure.

In sum, all of the factors weigh against granting Plaintiffs additional time to depose Mr. Jarvis before responding to GAF's Motion for Summary Judgment. Plaintiffs' Motion to Deny or Defer GAF's Motion for Summary Judgment under Federal Rule of Civil Procedure 56(d) is therefore **DENIED**.

### 3. Plaintiffs have not demonstrated the existence of a genuine issue of material fact as to GAF's liability.

GAF's Motion for Summary Judgment seeks judgment in its favor on all five counts of Plaintiffs' Complaint. GAF contends that Plaintiffs' failure to introduce evidence that the shingles used on Plaintiffs' roof were defective in any way is fatal to all of Plaintiffs' claims. The undersigned agrees.

Plaintiffs do not dispute that evidence of a defect in the shingles is necessary to succeed on their claims against GAF. (*See* Pls.' Mem. in Opp'n to GAF's Mot. for Summ. J. 3, ECF No. 34 ("The *only remaining issue* is whether the GAF shingles, themselves, were 'defective,' within the meaning of Ohio's Statutory Product Liability Law and within the meaning of the Implied Warranties provided by the Uniform Commercial Code.")[3] (emphasis in original).) But

---

[3] Plaintiffs do not address their claims against GAF for general negligence, engineering professional negligence, or violation of the Ohio Consumer Sales Protection Act in their Memorandum in Opposition. It is unclear whether Plaintiffs did not initially intend to assert these claims against GAF in the Complaint (which often indiscriminately makes allegations against "Defendants" without differentiating the roles they played in Plaintiffs' roof

Plaintiffs have failed to demonstrate the existence of a genuine issue as to whether the shingles were defective. Plaintiffs have not even identified the nature of the purported defect. In their Memorandum in Opposition, under the heading, "The 'Defect," Plaintiffs state only:

> *According to Restore's Mediation Statement* [which has been stricken] *and Marvin Leach's deposition*, the GAF products (shingles), which are the subject of this case, were *(in the opinion of Kevin Jarvis, an expert witness . . . . the only expert witness who actually saw the GAF shingles which were installed on the Plaintiffs' home)* defective in manufacture or construction, as described in Revised Code § 2307.74; defective in design or formulation, as described in § 2307.75; and were defective for failure to conform to representations, as described in Revised Code § 2307.77, all within meaning of Revised Code § 2307.73.

(Pls.' Mem. in Opp'n 9, ECF No. 34) (emphasis and ellipsis in original). Beyond merely reciting statutory provisions in a conclusory manner without evidentiary support, Plaintiffs' assertion is misleading. As explained above, Mr. Leach's testimony did not, in fact, establish that Mr. Jarvis determined that the shingles were defective; rather Mr. Leach testified that "Kevin made a few statements on a few reasons what he thought. I can't remember verbatim exactly what they were" and that "Kevin was speaking to that matter. It would be best to get that answer from him." (Leach Dep. 36–37.) Nor has Mr. Jarvis been offered as an expert witness by any party or produced an expert report. Further, contrary to Plaintiffs' assertion that Mr. Jarvis was "the only expert witness who actually saw the GAF shingles which were installed on the Plaintiffs' home," Plaintiffs' own expert witness, Allen Taylor, inspected the roof and noted no defects in the GAF shingles. (*See generally* Taylor Aff., ECF No. 30-2.)

---

replacement) or whether Plaintiffs have now abandoned those claims. *See*, *e.g.*, *Brown v. VHS of Michigan, Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) ("[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment."). But even if Plaintiffs intend to assert claims for negligence or unfair sales practices against GAF, the Court cannot discern how Plaintiffs could succeed on those claims without demonstrating that the shingles were defective.

The other evidence Plaintiffs rely on is similarly unhelpful. In response to an interrogatory seeking "identif[ication of] all facts that support Restore's claim that the GAF materials at issue were defective, old, or out-of-date," Restore responded, "[b]ased off of the pictures received from Plaintiffs, Kevin Jarvis will testify about the shingles coming apart." (Restore's Ans. to GAF's Interrog. No. 8, ECF No. 30-5.) Again, Kevin Jarvis's testimony is not before the Court. And although Mr. Leach testified that he had "reason to believe that the GAF shingles installed on [Plaintiffs'] house were defective" because "[i]t wasn't the whole shingle that had come off the roof. It was just that top, I think they call it, applique, that had separated and let go from the shingle, the base," he later clarified that he could tell from the photos of separated shingles that "something was not right," but couldn't say "if it was from the shingle being pried by the person that was lifting it up or if it was just not sealed properly from manufacturing." (Leach Dep. 33–34, 38–40, ECF No. 30-3.)

Finally, Plaintiff asserts that "[a]fter Mr. Taylor inspected the above-referenced roofing system, he reported to Jon Rogers that he found that the . . . damage to the Plaintiffs' home, had been caused by Restore Contracting, Inc.'s failure to install a workmanlike roofing system and caused by the defective GAF shingles which had been installed by Restore Contracting, Inc." (Pls.' Mem. in Opp'n 5 n.7, ECF No. 34) (citing Taylor Aff. ¶¶ 7–12, ECF No. 30-2.) However, Mr. Taylor's affidavit does *not* identify any defects with the GAF shingles; nor does Mr. Taylor place any responsibility of any kind on GAF for the damage to Plaintiffs' home. (*See generally* Taylor Aff., ECF No. 30-2.)

In sum, Plaintiffs have not offered any evidence, expert testimony or otherwise, that could create a genuine dispute as to whether the GAF shingles used on Plaintiffs' roof were

defective. Without this evidence, Plaintiffs cannot succeed on any of their claims against GAF. Accordingly, GAF's Motion for Summary Judgment is **GRANTED**.

## V.     DISPOSITION

For the foregoing reasons, Plaintiffs' Motion for Summary Judgment (ECF No. 30) is **DENIED**, GAF's Motion to Strike (ECF No. 37) is **GRANTED**, Plaintiffs' Motion under Rule 56(d) (ECF No. 33) is **DENIED**, and GAF's Motion for Summary Judgment (ECF No. 32) is **GRANTED**. Defendant GAF Materials, LLC, is **DISMISSED** from this action.

Plaintiffs' claims against Defendant Restore Contracting, Inc., remain pending. Plaintiffs and Restore are **ORDERED** to file a joint written report detailing the status of this case and indicating whether this matter should be set for trial **WITHIN 30 DAYS of the date of this Opinion and Order**.

**IT IS SO ORDERED.**

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE